CASE 111—PETITION ORDINARY—JUNE 16.

# Garnett v. Farmers' National Bank of Cynthiana.

### APPEAL FROM HARRISON CIRCUIT COURT.

THE SURETIES OF A BANK OFFICER are not liable for a loss to the bank caused by the employment of the officer out of his sphere. But the mere fact that the officer was employed out of his sphere is not sufficient to release his sureties, if the extra duties had nothing to do with the loss.

Where a bank clerk was enabled, by simply changing figures in books of which he had exclusive control, not only to perpetrate, but to conceal from other officers, a fraud, the loss thereby caused to the bank had no connection with his occasional performance of the duties of cashier during the temporary absence of that officer, and, therefore, the sureties in a bond executed by him for the faithful performance of his duties as clerk are liable for such loss, notwithstanding his occasional performance of the duties of cashier. But the sureties are not liable for a sum which their principal, by being authorized to act as cashier, was enabled, as well as tempted, to abstract from the funds of the bank, the theft of which he was enabled to conceal by false entries in books which were under the exclusive charge of the cashier

WARD & KIMBROUGH FOR APPELLANT.

1. As to the duties of bank cashiers, see Morse on Banks and Banking, 2d

Garnett v. Farmers' National Bank of Cynthiana.

ed., p. 156; Merchants' Bank v. State Bank, 10 Wall., 604; Baldwin v. Bank of Newberry, 1 Wall., 234; United States v. City Bank of Columbus, 21 How., 356; Wild v. Bank of Passamaquoddy, 3 Mason, 505; Franklin Bank v. Stewart, 37 Me., 519; Sturgis v. Bank of Circleville, 11 Ohio St., 153.

It was not contemplated by the parties to the bond sued on that King's sureties should become insurers that such responsible duties should be faithfully performed by their principal. (Morse on Banks and Banking, 3d ed., vol. 1, secs. 25, 26 and 30; Durkin v. Exchange Bank, 2 Patton & Heath, 277.)

2. A surety is entitled to stand upon the strict terms of his contract. (Miller v. Stewart, 9 Wheat., 680; Strowbridge v. Baltimore, &c., R. Co., 14 Md., 360; 74 Am. Dec., 541; Blair v. Perpetual Ins. Co., 10 Mo., 559; 47 Am. Dec., 129; Weed Sewing Machine Co. v. Winchell, 107 Ind., 260; City of Lafayette v. James, 92 Ind., 241; 47 Am. Rep., 140; Græter v. De Wolf, 112 Ind., 1; Meadows v. State, 114 Ind., 537; Detroit Savings Bank v. Zeigler, 49 Mich., 157; Nichols v. Palmer, 43 Wis., 110.)

The contract must be given a reasonable interpretation in accordance with established rules of construction. (Irwin v. Killum, 104 Ind., 113; Weir Plow Co. v. Walmsley, 110 Ind., 242; Engler v. People's Fire Ins. Co., 46 Md., 333; W. W. Kimball Co. v. Baker, 62 Wis., 526.)

3. Where the duties of a principal appointed to a particular office or employment are so changed by the act of the employer that the risk of the surety is materially altered, the surety has a right to say that his obligation does not extend to such altered state of things. (First National Bank of Baltimore v. Gerke, 68 Md., 449; s. c., 6 Am. St. Rep., 453; Miller v. Stewart, 9 Wheat., 680; Pybus v. Gibbs, 6 El. & B., 902; Manufacturers' National Bank v. Dickerson, 41 N. J. L., 448; s. c., 32 Am. Rep., 616.)

FORMAN & CASON FOR APPELLEE.

1. The petition presents a good cause of action. (Pendleton v. Bank of Kentucky, 17 B. Mon., 177.)

2. Entries made by a defaulting clerk, who was dead at the time of the trial, are competent to be read to the jury upon the question between the bank and his sureties as to whether default was made and concealed by erasures and false balances. (United Soc. Shakers v. Underwood, 9 B. M., 611; Poor v. Robinson, 13 Bush, 290.)

3. The occasional performance by the clerk of the duties of the cashier during the temporary absence of the latter did not release the sureties of the former from liability. (Morse on Banks and Banking, 3d ed., sec. 26; Rochester Bank v. Elwood, 21 N. Y., 88; Home Savings Bank v. Traube, 42 Am. Rep., 402; Detroit Savings Bank v. Zeigler, 42 Am. Rep., 402.)

4. A covenant for "faithful discharge of duty" in a bank clerk's bond means a guaranty of honesty as well as a guaranty of competency to perform the work assigned. (Minor v. Mechanics' Bank, 1 Pet., 68.)
5. A written agreement can only be impeached by a square allegation of fraud or mistake in its execution. (Tribble v. Oldham, 5 J. J. Mar., 142.)

GEORGE C. LOCKHART ON SAME SIDE.

While it is not legally competent to impose new duties upon an officer to the prejudice of his sureties, yet the sureties are liable for the faithful performance by the principal of the duties of another officer to which he is temporarily assigned in the absence of such officer. (Detroit Savings Bank v. Zeigler, 49 Mich., 157.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

October 24, 1881, Paul King, being appointed clerk of appellee, together with appellants, his sureties, executed a bond in which they covenanted in substance that he, King, as such clerk, would well and truly perform all the duties and services required of him by the board of directors, or by the by-laws of the bank or laws of the land, and faithfully fulfill all the trusts confided to him during his continuance in office as clerk. It was further covenanted that no temporary or occasional absence of said King, clerk, from the bank should be claimed or asserted by him or the sureties as impairing the validity of the obligation, or the right of the bank to have recourse thereon for any breach of the conditions of the bond, but the same, notwithstanding such absence, should continue in full force. October 29, 1888, appellee brought this action to recover of appellants, sureties of King, he being then dead, the aggregate sum of four thousand six hundred and twenty-two dollars and ninety-two cents, of which, it is stated in the petition, the sum of three thousand six hundred and

twenty-two dollars and ninety-two cents was, between October 24, 1881, and May 7, 1885, fraudulently, and without knowledge of the board of directors, converted by King to his own use by means of false entries and balances of his individual deposit account; and one thousand dollars thereof was, in January, taken directly from the funds of the bank and appropriated by him.

The verdict of the jury, followed by judgment, was for the whole amount claimed in the petition, less interest; and if King had been alive, and it had been against him alone, there could have been no question of its correctness, for it was shown by evidence, about the competency of which there is no doubt, that he fraudulently appropriated both sums. But appellants, as sureties, are liable, if at all, in virtue alone of the bond, which, by its terms, binds them for the faithful performance by King of services and duties as clerk.

It appears that King kept with the bank the whole time he was clerk an individual deposit account, and by a system of erasures and false entries in the particular book kept by him as clerk he was enabled to deceive both the cashier and directors as to the true state of his deposit account, and thus defraud the bank of the first mentioned of the two sums. But the evidence shows that during occasional absence of the regular cashier King was in the habit of performing the duties of that office as well as of his own. And one ground for reversal is action of the lower court in overruling the motion to require the plaintiff to specify in the petition the particular amounts paid

to or converted by King while he was acting in each capacity.    We do not, however, think it was material, even if it had been in the plaintiff's power, to make more specific the allegations on that subject; for the fraud was accomplished as to that particular sum, not by directly abstracting the money, nor by false entries in the cashier's books of amounts deposited by, or paid on checks to, King, but in the manner already referred to, which he could have done whether the cashier was present or absent.

In Morse on Banking, section 17, it is said that on principle it would seem clear, first, that if loss to a bank is *caused* by the employment of an officer out of his sphere, the surety is not liable, and to this the cases agree; second, that if it can be clearly shown that the extra duties had nothing to do with the loss, but that it was caused by the officer's conduct in the sphere of his own office, or by a wrongful advantage of the opportunities afforded by that office, the surety should be held, for it is a loss within the bond, unless there be an express provision that such duties shall avoid it.    It is, however, stated by the author that the cases do not assent to the second proposition if the duties are of a higher grade than those of the bonded office.    But the reason for that exception does not exist, and, consequently, it should not be applied, where it is made clearly to appear that the loss was caused alone by the non-performance or wrongful performance by the officer of the proper and regular duties of his own office; for in such case it can not be said to have resulted from greater temptation being put in his way or greater

facilities being afforded to do the particular wrong
than were contemplated and provided for in the bond.
It is true the surety has a right to judge of the cir-
cumstances and conditions in which he is willing to
be liable, and can not be made so beyond express
terms of his bond. But where, as in this case, the
clerk is enabled, by simply erasing and changing fig-
ures in books of which he has exclusive charge, to
not only perpetrate, but conceal from other officers,
a fraud, we do not see how the loss to the bank
thereby caused can be connected with or fairly made
a sequence of his performance of the duties of cashier
during the occasional and temporary absence of that
officer.

In Home Sav. Bank v. Traube, 75 Mo., 199 (42 Amer.
Rep., 402), a case like this, it was said: "It is clear
that the sureties could not be held for any defalca-
tion of Rodel as teller, and it may be they should
not be held liable for any false entries made by him
in order to conceal such defalcation, as they might
be regarded as having been indirectly occasioned by
the action of the bank in appointing him teller. But
when the omission of Rodel to perform his duty as
book-keeper is wholly disconnected from any improper
act on his part as teller, and was not superinduced
by his appointment as teller, we do not see why the
sureties should not be held liable therefor."

In our opinion the evidence clearly shows that King,
without any other opportunity or means than such as
his office of clerk afforded, and while acting entirely.
within the sphere of that office, fraudulently converted
the sum of three thousand six hundred and twenty-two

dollars and ninety-two cents, and the express terms and conditions of the bond being thereby and thus violated, without contributing fault of the bank, his sureties are liable therefor.

But we think it is just as clear they are not liable for the other sum of one thousand dollars; for he was, by being authorized and required to act as cashier, enabled, as well as tempted, not only to abstract that sum from the funds of the bank, that as clerk he had no right to touch, but to conceal the theft by false entries, or addition of figures, in books that he, as clerk, had no right to handle, but were under exclusive charge of the regular cashier. As the sureties covenanted to answer for the honest and faithful discharge by King of the duties of clerk only, the bank must be regarded as having empowered him, at its own risk, to perform the more responsible duties of cashier, and consequently without remedy on the bond for any wrong he was tempted or enabled to commit by reason of being employed, and while acting in that capacity. There is no need to speculate whether any of the sureties were aware of and contemplated the probable necessity of King taking the place for a long or short time of the absent cashier, inasmuch as the bond does not expressly or by fair implication bind them for his conduct in such case. As the loss of the one thousand dollars resulted from the act of the bank in putting King in a position where he could and did take it, and the sureties did not bind themselves to answer therefor, they can not be now held liable, and in that respect the judgment is erroneous, and reversed for further proceedings consistent with this opinion.